IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LA MAR GUNN,                          :
                                      :
            Plaintiff,                :
                                      :
      v.                              :      Civ. No. 13-174-RGA
                                      :
FIRST AMERICAN FINANCIAL              :
CORPORATION,                          :
                                      :
            Defendant.                :

La Mar Gunn, Camden Wyoming, Delaware; Pro Se Plaintiff.

Seth Andrew Niederman, Esquire, Fox Rothschild LLP, Wilmington, Delaware; Counsel for Defendant.

## MEMORANDUM OPINION

May 30, 2014
Wilmington, Delaware

*Richard G. Andrews*

**ANDREWS, U.S. District Judge:**

Plaintiff La Mar Gunn filed this action alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and a claim for breach of contract. (D.I. 3, 20). Gunn seeks compensatory, statutory, treble, and punitive damages, as well as equitable relief. He appears *pro se* and has been granted leave to proceed *in forma pauperis* (D.I. 7). The Court now considers the Defendant's Motion to Dismiss (D.I. 22) the amended complaint. The matter has been fully briefed. (D.I. 23, 24).

## BACKGROUND

This is a lawsuit following the foreclosure of property Gunn purchased that was encumbered by a first mortgage. (*See* D.I. 14 n.2). The original complaint named Douglas A. Shachtman and First American Financial Corporation as defendants. Upon motion, the Court dismissed all claims against Shachtman and, upon screening of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), dismissed the remaining claims (RESPA, TILA, and contract) as frivolous finding them time-barred. Upon appeal, the dismissal of Shachtman was affirmed. The Third Circuit vacated dismissal of the remaining claims and remanded for consideration of the issue of equitable tolling upon Plaintiff's filing of an amended complaint. (*See* D.I. 18).

Gunn filed an amended complaint on January 29, 2014. (D.I. 20). On February 12, 2014, First American filed a motion to dismiss pursuant to Rule 12(b)(6) on the grounds that the Amended Complaint names the wrong defendant, fails to state claims

2

under the RESPA and the TILA, and that all claims are time-barred with no basis for equitable tolling.

First American provided Gunn settlement services at the time he purchased real property in Bear, Delaware.[1]  The Amended Complaint alleges that on March 6, 2006, First American Financial Corporation, doing business as First American Title, through its agent Lender's First Choice, provided Gunn with a title policy commitment. (D.I. 20, ¶¶ 7, 9). At closing, First American issued a first lien title insurance policy on the property. (*Id.* at ¶ 11). Gunn alleges that First American represented to him that there were no liens on the property, that all outstanding liens were satisfied and, based upon those representations, he incurred a $360,000 mortgage. (*Id.*). The Amended Complaint alleges that First American "fraudulently concealed the facts as evidenced by the subject title policy issued on March 6, 2006."[2]  (*Id.* at ¶ 13). It further alleges that a counterfeit document was prepared and signed by Select Portfolio Servicing employees Madeline Ramos and Nikole Shelton, none of whom are named defendants in this action.[3]  (*Id.* at ¶ 15). Finally, the Amended Complaint alleges that the closing took place without an attorney, even though one is required in Delaware. Gunn alleges that First American told Gunn an attorney was not needed. (*Id.* at ¶ 20).

---

[1] As set forth in numerous cases, Gunn lost the property through a foreclosure action.

[2] The Amended Complaint does not indicate the facts First American allegedly concealed from Gunn, although one might infer it is the counterfeit document prepared by Select Portfolio Servicing employees.

[3] The Amended Complaint does not identify the alleged counterfeit document. From the context, one might guess that it is a false first mortgage (*see id.* at ¶¶ 22-23), but it might be something else.

## STANDARDS OF LAW

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Because Gunn proceeds *pro se*, his pleading is liberally

4

construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## DISCUSSION

### RESPA

Count One (¶¶ 21 - 27) alleges that First American willfully violated RESPA when it misrepresented to Gunn that he was in first title position and that there were no liens against the property in violation of 12 U.S.C. §§ 2601 through 2617. The count alleges that First American, through its agents, performed a title search and was aware of the counterfeit document clouding title. In addition, it alleges that an agent of First American reviewed and confirmed the title search performed by Lenders First Choice on March 3, 2006, and that First American and its agents intentionally misrepresented the facts surrounding Gunn's title. Count One alleges that Lenders First Choice issued "bogus title policies" through First American. Gunn alleges that, because he paid for the title policy, First American is obligated to either attack the counterfeit documents filed by Select Portfolio Servicing and/or indemnify him against losses arising from the forged documents that clouded his title. Gunn alleges that because of First American's fraudulent concealment, he lost his family's home.

First American contends that the RESPA claim is subject to dismissal given that the count does not indicate which sections of RESPA were allegedly violated, and that the allegations do not, in any event, fall under the purview of RESPA. Gunn opposes dismissal of the RESPA claim on the grounds that First American and its agents

5

performed a title search and represented to him that there were no valid claims or defects in the chain of title.

RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans, and imposes duties on lenders and loan servicers. *See* 12 U.S.C. § 2601. Its purpose is to effect certain changes in the settlement process for residential real estate resulting in: (1) more effective advance disclosure to home buyers and sellers of settlement costs; (2) the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) significant reform and modernization of local record-keeping of land title information. *See id.* at § 2601(b)(1) through (4). RESPA regulates the services lenders provide "in connection with a real estate settlement," which covers things such as title searches, title insurance, the preparation of documents, the origination of a federally related mortgage loan, the handling of the closing or settlement, and other services. *Freeman v. Quicken Loans, Inc.,* __U.S.__, 132 S.Ct. 2034, 2038 (2012) (quoting 12 U.S.C. § 2602(3)).

The Amended Complaint does not indicate the section or sections of RESPA that First American allegedly violated. Moreover, in reading the allegations, it is evident that the violations of which Gunn complains do not fall under the ambit of RESPA. Gunn's remedy as to the facts alleged in Count One – that is, that First American represented that he was taking the property free and clear of any encumbrances, when

6

it knew he was not, and issued him a title insurance policy,[4] does not lie under RESPA.
Therefore, the Court will grant the motion to dismiss Count One for failure to state a
claim upon which relief may be granted.

## TILA

Count Two (¶¶ 28-40) alleges that First American violated the TILA, 15 U.S.C.
§ 1601, when it misrepresented to Gunn that there were no existing liens that could
compromise his first lien title position. The Amended Complaint alleges that First
American, through its agents, presented Gunn with a fraudulent title insurance policy in
order to conceal or obfuscate its TILA violations.[5] The Amended Complaint alleges that
First American claims "the misrepresentations, nondisclosures and sham title policy
were the result of innocent mistakes" and that it apologized to Gunn on February 1,
2011 after he was evicted from his home.

First American contends that Gunn has no basis to assert a TILA claim as it is
not a creditor subject to the provision of the TILA. Gunn did not respond to First
American's motion to dismiss the TILA claim.

The TILA was enacted "to assure meaningful disclosure of credit terms so that
the consumer will be able to compare more readily the various credit terms available to
him . . . and to protect the consumer against inaccurate and unfair" practices. 15
U.S.C. § 1601; *Rossman v. Fleet Bank (R.I.) N.A.*, 280 F.3d 384, 390 (3d Cir. 2002). It

---

[4]In other words, Gunn seems to be alleging that First American was trying to put
itself out of business by issuing bad title insurance policies. If this is what he is alleging,
there is a question whether it is a plausible allegation.

[5]The Amended Complaint does not set forth the alleged TILA violations.

is a remedial statute and is to be liberally construed in favor of borrowers. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 899 (3d Cir. 1990) (citing *Bizier v. Globe Fin. Services*, 654 F.2d 1, 3 (1st Cir.1981)). The TILA requires strict liability in favor of the consumers when mandated disclosures have not been made. 15 U.S.C. § 1640(a); *see also Thomka v. A.Z. Chevrolet Inc.*, 619 F.2d 246, 249–50 (3d Cir. 1980). To achieve this end, the statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998), and imposes strict liability on creditors who fail this mandate. *See* 15 U.S.C. § 1640(a).

The Amended Complaint identifies First American as the entity who issued a title policy commitment and who issued the title insurance policy at the closing of the real property that Gunn ultimately lost through foreclosure. It does not identify First American as a creditor as that term is defined by the TILA.[6] The definition of "creditor" refers:

> only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement . . . . Any person who originates 2 or more mortgages referred to in [15 U.S.C. § 1602(aa) (2006) ] in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this title.

---

[6]The TILA was amended in 2008, 2009, and 2010. The Court will use the version in effect at the time of the alleged violation.

15 U.S.C. § 1602(f) (2006).

"Whether one is a TILA creditor is a bifurcated question, requiring a person both to be a 'creditor' in general, by extending credit in a certain minimum number of transactions, and to be the 'creditor' in the specific transaction in dispute." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 411 (3d Cir. 2000) (citation omitted).

As set forth in the allegations of the Amended Complaint, First American is the entity that provided title insurance to the property Gunn purchased in 2006. In no way do the allegations of the Amended Complaint even hint that First American is a creditor as that term is defined by the TILA. It follows that the TILA is inapplicable to the claims raised against First American in Count Two. Therefore, the Court will grant First American's motion to dismiss Count Two of the Amended Complaint.

BREACH OF CONTRACT AND STATUTE OF LIMITATIONS

Count Three alleges that, because First American was paid to perform a title search and issue title insurance, it breached its contract with Gunn when it produced a report that misrepresented the facts as to the actual chain of title. First American moves for dismissal on the grounds that the claim is time-barred.

Under Delaware law, the statute of limitations for a breach of contract claim is three years. 10 Del. C. § 8106. The cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Gunn alleges that First American breached its contract with him when, in performing a title search and issuing title insurance, it produced a report that misrepresented the facts as to the actual chain of title. According to the Amended Complaint, First American issued the title insurance

9

on March 6, 2006. On December 12, 2006, Gunn was notified that foreclosure proceedings had been commenced against the prior owners of the real property at issue, and on December 4, 2008, Gunn retained counsel to defend against the foreclosure. (D.I. 3 ¶¶ 7, 10).

As previously determined by this Court, the February 1, 2013 filing of this action clearly exceeds the three-year statute of limitations for a breach of contract claim under Delaware law. (See D.I. 14, 15). At the same time, the Court also determined that the claims under RESPA and TILA were time-barred in light of the fact that the loan at issue was consummated on April 17, 2006 and the February 1, 2013 filing of this action clearly exceeded the statutes of limitations under RESPA and TILA. See, e.g., 12 U.S.C. § 2614 (RESPA claims brought pursuant to 12 U.S.C. § 2605 must be filed within three years of the violation, and RESPA claims brought pursuant to 12 U.S.C. §§ 2607 or 2608 must be filed within one year of the violation); 15 U.S.C. § 1640(e) (TILA claims for damages must be brought within one year of the date of the occurrence of the violation); 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(1) (a claim for rescission under the TILA is barred at the end of the three-year limitations period); Williams v. Wells Fargo Home Mortg., Inc., 410 F. App'x 495, 498 (3d Cir. 2011).

The Amended Complaint, however, attempts to allege fraudulent concealment as a means to equitably toll the statute of limitations, but it fails to adequately allege fraudulent concealment, which must be pled with particularity. See Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."). "The plaintiff must plead or allege the date, time and place of the alleged
fraud or otherwise inject precision or some measure of substantiation into a fraud
allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The Amended
Complaint provides nothing of the sort. Instead, it invokes the theory of equitable tolling
through a legal conclusion without supportive facts. Even if the equitable tolling
pleading requirements only had to meet the *Iqbal/Twombly* standard, the amended
complain would fail, as it alleges no relevant facts. Notably, Gunn previously alleged
facts in the original Complaint that indicate he became aware of an issue with the
priority of his lien by December 2006, and, if that was not notice, by December 2008,
he retained counsel to defend against the foreclosure. (D.I. 3, ¶¶ 8-11). Other opinions
of this Court have noted that the property at issue was sold at sheriff's sale on
December 9, 2008 (*U.S. Bank v. Gunn*, No. 11-1155, D.I. 38 at 2; *see also* D.I. 1-2 at
16, entry for 1/30/09 ("court is denying motion to set aside sheriff sale held last month
and the sale is confirmed")), that is, more than four years before this suit was filed. It is
hard to imagine the facts Gunn could allege[7] that would explain why the sheriff's sale
did not give him notice that First American had breached its contract, or violated
RESPA or TILA. In light of the foregoing, the Court finds that there is no factual basis
alleged in the Amended Complaint that would make it plausible to conclude that the
statute of limitations was tolled as to the breach of contract, RESPA, or TILA claims
under a fraudulent concealment theory. Therefore, the Court will grant First American's

---

[7] In his brief, Gunn alleges that he owned the property until February 1, 2011,
citing New Castle County Land Records, but he does not allege that in his amended
complaint.

11

motion to dismiss Counts One, Two, and Three as they are time-barred.

## CONCLUSION

Counts One and Two fail to state a claim upon which relief may be granted and Counts One, Two, and Three are barred by the applicable statute of limitations. Therefore, the Court will grant First American's motion to dismiss.[8] (D.I. 22). Gunn was given an opportunity to cure his pleading defects relating to the tolling of the statute of limitations, and has failed to do so. He is *pro se*. Thus, although there is little reason to believe that he can cure any of the pleading defects that are identified in this opinion, I will give him one more opportunity to correct them. Thus, dismissal will be without prejudice. He will be granted a reasonable period of time to file an amended pleading.

An appropriate order will be entered.

---

[8]Because Gunn and Shachtman were both citizens of the State of Delaware, there was not complete diversity of parties at the time Gunn filed this suit. Shachtman, though, was dismissed. I believe that would permit diversity jurisdiction if it would otherwise exist between Gunn and First American. *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 573 (2004). Both the original Complaint and the Amended Complaint allege that First American Financial Corporation is a California corporation, which I accept as true given the posture of the case. Thus, were the breach of contract claim not time-barred, the amended complaint would state a basis to exercise diversity jurisdiction over the breach of contract claim. If there were not diversity jurisdiction, I would be unlikely to exercise supplemental jurisdiction over the breach of contract claim, for numerous reasons, including the lengthy history of state court litigation relating to the property in question.

12